ANN R. YOUNG *v.* JEREMIAH MOCK ET AL.

PARTNERSHIP. *Individual interest of partner. Sale. Right of vendee. Injunction.*

Where partners, by contract between themselves, place the co-partnership business in the hands of a third person, to be carried on for their benefit, each agreeing not to interfere with its management by said person, a vendee of one of them is entitled to enjoin the other from a fraudulent interference with the business until a receiver can be appointed.

FROM the chancery court of Franklin county.

HON. WILLIAM C. MARTIN, Chancellor.

Mrs. Young, appellant, was complainant in the court below; Mock and others, appellees, were defendants there.   The facts are stated fully in the opinion of the court.

*Wade R. Young,* for appellant.

If there is a right to an accounting and liquidation of the partnership, there is a corresponding right to a receiver and an injunction to preserve the assets until the final settlement can be had, if the facts render it necessary.   "Where a concern of any character or kind, covering a partnership, is broken up by controversial suits, and it is apparent that there can be no agreement between the parties in interest for its continuance, a receiver will be appointed."   *New* v. *Wright,* 44 Miss., 202.

"When, upon the dissolution of a partnership, the members of the firm are unable to agree upon the manner of closing up its affairs, it is the usual practice of courts of equity, with a view to protect the rights of all parties in interest, to exclude all the parties from participating in the business of closing up the firm, and to appoint a receiver for that purpose; and, in that event, an injunction is proper to prevent a partner from participating in the winding up of the firm."   High on Injunctions, secs. 1350, 1351, 1354, 1357.

"The sole object of an interlocutory injunction is to preserve the subject in controversy in its then condition, and without determining any questions of right, merely to prevent the further perpetration of wrong, or the doing of any act whereby the right in controversy may be materially injured or endangered."   Ib., secs. 4, 5.

"If, however, a clear case of irreparable injury is shown as likely to result to complainant unless the injunction is granted, and it does not appear that the issuing of the writ will work any such injury to defendants, the relief will be granted."   Ib., sec. 13.

"Courts of equity will entertain jurisdiction to prevent by injunction members of a co-partnership from the commission of acts inconsistent with the terms of their agreement, and from violating the rights of their co-partners." Ib., sec. 1330. *Rutland Marble Co.* v. *Ripley,* 77 U. S., 389.

"In an action for the dissolution of a partnership the court may, upon proper showing, restrain any member of the firm from improper interference with the business, or from committing any damage to the property of the firm." High on Injunctions, sec. 1342.

"If the bill shows a probable right and a probable danger to that right, without the intervention of the court through its injunction, a dissolution will not ordinarily be allowed upon a pure question of law, unless the question is plain beyond a reasonable doubt." Ib., sec. 1524. "And when such question is not free from difficulty, the better course is to refuse the motion to dissolve, and retain the injunction until the final hearing." Ib.

"Where the case, as presented by the bill, is one which seems to require investigation, and the effect of dissolving the injunction would be to place the property which is the subject of controversy beyond the control of the court in which the action is pending, and would be equivalent to a complete denial of the relief sought by the bill, the injunction will not be dissolved." Ib., sec. 1509.

The case of *Bank* v. *Railroad Co.,* 78 U. S., 624, upon which the chancellor rested his decision, in no way conflicts with the doctrine stated. In that case the assignee did not file a bill for an accounting and liquidation of the partnership to reach the share of his assignor in the partnership assets, but claimed an interest in specific property, and it was in that connection that the court said: "The property of a partnership belongs to the firm, and not to the partners, each of whom is entitled only to a share of what may remain after payment of the partnership

debts, and after a settlement of the accounts between the part-
ners.

"The right of an assignee of a partner is only an equity to
share in the surplus, if any, of the firm property after settle-
ment of the partnership accounts.

"To a bill for the settlement of the partnership accounts, all
the members of the firm are indispensable parties.

"A bill in chancery will not be dismissed for want of proper
parties, if the necessary parties can be supplied."

The bill in that case was dismissed solely because the neces-
sary party, assignor of the complainant, could not be supplied
without divesting the court of its jurisdiction because of citi-
zenship.

This is a bill by the assignee for a settlement and liquidation
of the partnership, in which the husband appears as the agent
of the wife; and, if he is a necessary party to the bill, and is
not already sufficiently a party to the record, he can be made
so on motion, and the failure to have him so made is no ground
for the dissolution of the injunction. Whether the partnership
was or was not dissolved at the time of the filing of the bill,
the complainant had a right to share in the surplus, if any,
of the firm property after settlement of the partnership ac-
counts, and to maintain her bill for that purpose; and if, after
the filing of such bill, the defendants, remaining partners, upon
the facts stated, could go on and do what they pleased with the
property of the partnership until the motion for the appoint-
ment of a receiver could be heard, in violation of the terms of
their agreement, and of her rights in the partnership property,
she would suffer irreparable injury, and practically have a
right without a remedy.

To prevent such injury the interlocutory injunction was
prayed for and granted solely to preserve the property in its
then condition until the chancellor, with due regard to his terms,
could hear the motion for the appointment of a receiver, and
no possible injury could result to the defendants, who had con-

sented to the appointment of Liddell as the common agent of the co-partners, and to the contract for the delivery of the five hundred thousand feet of lumber, and they were no more excluded from participation in the business by the interlocutory injunction than they had been by their prior agreement not to interfere with or disturb him in the management of the business.

*Pintard & Ratcliff,* for appellees.

The sale by J. L. Young to complainant *ipso facto* dissolved the partnership, and the only interest complainant could have in the business would be what J. L. Young had after winding up the business and stating an account between the partners. Does this give her the right, in her name alone, to sue out this injunction? We say not, for the reason that the co-partnership, having been dissolved by the sale of J. L. Young, the business could no longer be carried on as it was originally intended. The only thing that could be done after the dissolution was winding up the business. The alleged agreement that Liddell should manage and control the business, as agent and attorney in fact of the Young Lumber Company, was made before any sale by J. L. Young of his interest, and whilst the partnership was in existence; but after the sale, and the partnership being dissolved, this agreement became void, and Liddell no longer has any right to manage the business. If it was necessary that the contract with the Louisville firm should be carried out, the partnership would be continued for that purpose, but not by Liddell, unless defendants should consent thereto, and if the co-partners could not agree, the court would appoint a receiver to carry out the contract and wind up the partnership. But here we have the spectacle of one co-partner, if we may call complainant such after a dissolution of the co-partnership, enjoining her co-partners from having anything to do with the business, leaving it in the hands of a person not a partner, without any bond, to do with it as he might choose.

If, after dissolution, Liddell could carry out the contract with the Louisville firm, what is there to prevent him from making another contract and carrying on the business indefinitely?

It was evidently the idea of the framer of the bill that Liddell could continue the business after the sale in the same manner as before; but, if the sale by J. L. Young of his interest to a third person *ipso facto* dissolved the co-partnership, then Liddell's authority ceased, and there was nothing left to be done but to wind up the business and state an account between the partners, which Liddell had no power to do. The chancellor did not err in dissolving the injunction, and he should be affirmed.

CALHOON, J., delivered the opinion of the court.

The single point is the propriety of dissolving an injunction on the motion of appellees, based on the face of appellant's original bill. In that bill Mrs. Young charges the following to be facts: In February, 1901, her husband, J. L. Young, and the appellees became partners, by written articles, under the style of the J. L. Young Lumber Company. And by the terms of these articles of partnership the appellees were to convey, and did convey, to the partnership all the merchantable timber growing on lands therein described; and her husband, Mr. Young, was to furnish and deliver, and did furnish and deliver, on the ground, the sawmill plant to saw the timber; and the mill was to be operated at the joint expense of the partnership, and the proceeds were to be divided, one-half to Mr. Young, and the other half to the appellees. In performance of that contract, Mr. J. L. Young did all he was required to do, and he contributed to the expense of the business $700; but the appellees failed and refused to perform their part, and contributed only $280 to the expense of the business, so that they owe the partnership $420, and the partnership is indebted to its creditors $800. In this condition of things, the partner, J. L.

Young, discovered that his co-partners, the appellees, were trying to sell and convey to other people the timber conveyed by them to the partnership; and they failed and refused to perform their contract, and refused to permit the articles of partnership, which were in their possession, to be filed for record, and were so interfering with the business as to make it unprofitable. Mr. J. L. Young thereupon filed his bill for a liquidation of the affairs of the partnership, and for injunction and receiver. Appellees then agreed, in compromise, that the sawmill business should be managed and controlled by one V. M. Liddell, as agent and attorney in fact for all the co-partners, and that they would not interfere with or disturb Liddell. in the management of the business. On the face of this agreement, and as part of it, appellees surrendered and filed for record the articles of partnership theretofore withheld by them; and Liddell went to Louisville, Ky., and contracted to deliver 500,000 feet of lumber at $8 per thousand, f. o. b. In this situation of affairs, J. L. Young sold and conveyed to his wife, Mrs. Anna H. Young, the appellant here, all his interest in the business, so that she now has all of his rights and liabilities. Liddell had tried to execute his agency, and the appellees so meddled and interfered with him, and with the business, in an effort to oust appellant and to take to themselves all the profits of the business, that it was impossible for him to further execute his agency and to carry out his contract in Louisville, Ky. The prayer of the bill is for a temporary receiver to take charge of the assets, and to carry on the business until the further order of the court, and for an injunction to prevent appellees from interfering with Liddell in his management until the appointment of a receiver, and that the partnership affairs be liquidated and wound up, its assets sold, its debts paid, and the profits distributed under direction of the court. The bill concludes with a prayer for general relief. Pursuant to this bill, the chancellor issued a writ of injunction, restraining appellees from interfering with or disturbing Lid-

dell in his management until the further order of the court, upon the execution of a bond by Mrs. Young in $500, which bond she gave, conditioned to satisfy such costs and damages as might be awarded because of the wrongful suing out of the injunction. Pursuant to notice to appear before the chancellor in vacation, to show cause why a receiver should not be appointed, appellees appeared and demurred to the bill because of no equity on its face; because it shows that the complainant, Mrs. Young, has no interest in the partnership; because the sale by J. L. Young to his wife, without appellee's consent, worked a dissolution of the partnership; because granting the injunction put the management in the hands of one not a co-partner, without bond being required, and because the bill shows that Mrs. Young can have no interest in the business until the debts of the partnership have been paid and the co-partnership wound up. This demurrer was never acted on as such as to the merits of the whole bill, but on it the chancellor dissolved the injunction and awarded damages on dissolution, and Mrs. Young appeals from that order.

In support of the decree dissolving the injunction, it is said that the sale by the partner Young to his wife *ipso facto* dissolved the partnership, and that she could have no interest in the business, except what might appear to be Mr. Young's interest after winding up the business and stating an account. Counsel say that Mrs. Young was not entitled to the injunction, because, the sale having dissolved the partnership, and all that was left to do being to wind up the business, the agency of Liddell became void, and that the court could not properly keep the agency alive to carry out contracts, thus allowing Liddell, without bond, to do as he saw fit to do. It must not be forgotten that the prayer of this bill, which sets up doings grossly fraudulent, is for a receiver, and for non-interference with Liddell's management only until a receiver was appointed, and also for liquidation, as well as for general relief. It is quite plain that the injunction would have been rightly issued, as it was issued,

if issued at the instance of J. L. Young, while a partner, on the allegations of this bill. All the partners had agreed by contract to the agency of Liddell, and that was binding and not disturbable, unless by some showing of his misconduct or incapacity. So the question is narrowed to whether Mr. Young's vendee was powerless to invoke the like protection for the interest she had bought. We think she is not powerless to do so. We think that even a purchaser at execution sale of J. L. Young's interest might have filed such a bill, and been entitled to the relief it prays. It seems, from the allegations of the bill, to be essential to the safety of the interest she had bought that the man agreed upon by the partners should not be interfered with, for fraudulent purposes, until a receiver should be appointed. It seems that this should be good ground for the interposition of a court of equity, which, it seems to us, should hold the party in charge by contract until it should appoint a receiver, or until some charge of untrustworthiness should be preferred before the appointment of a receiver. That a partner may sell or mortgage his interest goes without saying. No authority impugns this right. That by so doing he gives his assignee the right to an account has never been disputed. It cannot be that the assignee may not protect his interest against fraud. Of course, the assignee cannot claim to be a partner in virtue of his purchase, but he may certainly shield his interest. He may do, for this object, whatever the legal or personal representatives of the selling partner might do; and undoubtedly they could prevent disturbance of the man in charge by contract, if worthy and competent, until a receiver should be appointed. There is no case brought to our attention holding the contrary. If the contrary be true, a court of equity cannot do equity. It surely could do no harm, with a bond of complainant to pay damages, to let the agreed agent carry out the Louisville contract and keep things going for a few days, until a receiver should be appointed, especially to prevent fraud. The particular partnership in this case cannot be

wound up in a day. The timber must be felled, sawed, and marketed, unless a sale in gross satisfactory to the parties or the court could be made; and, until a receiver to do this be appointed, or agreed on, no harm could result from permitting the contract agent to hold, with complainant's bond, who charges a scheme to defraud her. The learned chancellor, in our judgment, was right in granting the injunction, and wrong in dissolving it.

*Reversed and remanded.*